IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMBER STEPHENS,<br><br>    Plaintiff,<br><br>    v.<br><br>GREENSKY, LLC,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:25-CV-3194-TWT |

**OPINION AND ORDER**

This is a Fair Labor Standards Act ("FLSA") lawsuit concerning unpaid minimum wage and overtime compensation. It is before the court on the Defendant Greensky, LLC's Motion to Compel Arbitration [Doc. 12]. For the following reasons, the Defendant's Motion to Compel Arbitration [Doc. 12] is GRANTED.

### I. Background

Plaintiffs are current and former customer solution advocates ("CSAs") for the Defendant Greensky, LLC. (Compl. ¶ 2, [Doc. 1]). Plaintiffs are compensated on an hourly basis. (*Id.*). Greensky allegedly had actual and constructive knowledge that CSAs were not receiving compensation for integral and indispensable off-the-clock work they had completed. (*Id.* at ¶¶ 4, 7). Plaintiffs filed suit against Greensky, asserting claims under the FLSA. (*Id.* ¶ 13). Defendant Greensky moves to compel arbitration.

Plaintiff Stephens signed an Employment Agreement Regarding Arbitration of Disputes ("Employment Agreement") on November 02, 2022. (Mot. to Compel Arb., Ex. 2 [Doc. 12-3], at 1). Plaintiffs Allen, Beachem, Chilsom, Holliman, and Perkins signed the Employment Agreement in April 2022. (*Id.* at 2-6). The important language of the agreement states,

> In connection with your employment by or association with The Goldman Sachs Group, Inc. or any of its subsidiaries or affiliates (collectively called "Goldman Sachs"), you agree as follows: 1) To the fullest extent permitted by law, any dispute, controversy or claim arising out of or based upon or relating in any way to your employment or other association with Goldman Sachs, or the termination of your employment, will be settled by arbitration…it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA."

(*Id.* at 1-6). It furthers continues in paragraph 3,

> "You acknowledge that your obligation to arbitrate matters arising out of or based upon or relating to your employment or other association with Goldman Sachs, or the termination of your employment applies irrespective of whether Goldman Sachs is or would be a party to any such arbitration…"

(*Id.*). After Goldman Sach's divestiture of Greensky, a letter was circulated on March 18, 2024. (Mot. to Compel, at 7). In that letter, which was signed by the employees for continued employment, employees were formally notified of Greensky's completed divested status, informed of salary information moving forward, and told that "nothing in this offer letter modifies or supersedes your obligations under any confidentiality . . . or similar agreement between you and GreenSky or Goldman Sachs . . . obligations will continue to apply

2

according to their terms . . . ." (Mot. to Compel, Ex. 3 [Doc. 12-4, at 2, 5). Plaintiffs Allen and Chilsom signed the letter. (*Id.* at 3, 6).

## II. Legal Standards

The Federal Arbitration Act ("FAA") "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (quotation marks omitted). Section 2 of the Act provides in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2. On a motion to compel arbitration, a court undertakes a two-step inquiry to determine (1) whether the parties agreed to arbitrate the dispute in question and, if they did, (2) whether legal constraints external to their agreement foreclose arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Courts apply state contract law to questions regarding the validity, revocability, and enforceability of arbitration agreements. *See Caley*, 428 F.3d at 1368. An arbitration clause may be unenforceable for the same reasons as any other contract, such as fraud or unconscionability. *See Mitsubishi*, 473 U.S. at 627. Or there may be statutory barriers to arbitration, such as a congressional intention to adjudicate certain substantive rights solely in a judicial forum. *See id.* at 628.

3

When an arbitration agreement clears both prongs of the FAA test, a court must either stay or dismiss the lawsuit and compel arbitration. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

### III. Discussion

Defendant argues all Plaintiffs are bound by an arbitration agreement for any claims related to employment with Greensky. (*See generally* Mot. to Compel Arb.). When the Employment Agreement was signed, Defendant was a subsidiary of Goldman Sachs Group ("GS"). (*Id.* at 9). Plaintiff opposes arbitration on the ground that the Employment Agreement only covers disputes relating to employment with GS and its then-current subsidiaries or affiliates. (Pl's Resp. in Opp'n to Mot. to Compel Arb., [Doc. 13], at 4-8). Plaintiffs argue that once Greensky was divested from GS, they were no longer covered by the Employment Agreement, and arbitration cannot be compelled. (*Id.* at 4-5). In Georgia, Black's Law Dictionary's definition of "affiliate" has been accepted as the usual and common meaning of the term. *Emory Univ., Inc. v. Neurocare*, 985 F.3d 1337, 1343 (11th Cir. 2021). At the time the Employment Agreement was executed, Black's Law Dictionary defined "affiliate" as "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate*, Black's Law Dictionary (11th ed. 2019). And it defined "subsidiary corporation" as "a corporation in which a parent corporation has a

4

controlling share; often shortened to subsidiary." *Corporation*, Black's Law Dictionary (11th ed. 2019). Defendant counters that the intent at the contract's formation controls the scope and duration and that Plaintiffs failed to cite evidence the Employment Agreement ceased upon divestiture. (Def.'s Reply Br., [Doc. 14], at 2-6).

### A. The Parties Agreement to Arbitrate the Dispute in Question

When examining if the parties agreed to arbitrate the dispute in question, the Supreme Court has clarified that the FAA generally applies to employment contracts; courts have further been consistent in finding claims arising under federal statutes as subject to arbitration agreements and enforceable under the FAA. *See Caley*, 428 F.3d at 1367. The FLSA claims fall under federal law, making the FAA applicable. Plaintiffs do not dispute either their signatures or that this type of dispute is suited for arbitration.

### B. External Legal Constraints

Turning to the second prong, courts apply the contract law of the particular state that governs the formation of contracts when evaluating legal constraints external to the agreement. *Caley*, 428 F.3d at 1368. The contract is silent about choice of law, stating only that "[a]rbitration will be conducted in New York City. . . . " (Mot. to Compel Arb., Ex. 2 at 1-6). There is no location indication on the checkbox signature, and the briefs make no mention of where the contract was executed. Nor do the parties argue over which state's law

5

should apply. Plaintiffs rely on two Georgia Supreme Court cases in their response brief. (Pls.' Resp., at 5). Defendant did not object to the use of Georgia contract law. (Def's Reply). This Court will thus proceed with the analysis under Georgia law.

To assess if there is a valid agreement to arbitrate between the plaintiff and the defendant, *see Lambert*, 544 F.3d at 1195, Georgia's agency law applies. A principal and agent relationship arises when one person expressly or by implication authorizes another to act for him. O.C.G.A. § 10-6-1; *Bully v. State*, 357 Ga. App. 666, 666 (2020). "The fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties." *Bully*, 357 Ga. App. at 666. Absent an express agreement, "apparent authority" exists "when the statements or conduct of the alleged principal reasonably cause the third party to believe the principal consents to have the act done on his behalf by the purported agent." *Harrison v. Legacy Hous., LP, GPLH, LC*, 324 F.Supp.3d 1288, 1299-1300 (M.D.Ga. 2018). Reasonable reliance is reliance justifiably exercised by a third party of "ordinary prudence conversant with business usages and the nature of the particular business." *Id.* Apparent authority must be based on the principal's conduct, not the agent's. *Id.* Here, Greensky became its own principal once the divestment was complete. GS acted as its agent when employees signed the Employment Agreement for Greensky in GS's platform.

"Generally, agency power is revocable at the will of the principal." O.C.G.A. § 10-6-33; *Thorton v. Lewis*, 106 Ga. App. 328, 332 (1962). The appointment of a new agent for the performance of the same act or death of either principal or agent revokes the power. *Thorton,* 106 Ga. App. at 332. If the power is coupled with an interest in the agent himself, it is not revocable at will. *Id.*; *see also Wheeler v. Pan Amer. Petroleum Corp.*, 48 Ga. App. 378 (1934). The burden of proving revocation of an agency is generally upon the party asserting the revocation. *Holland v. King*, 72 Ga. App. 179, 180 (1945). An arbitration clause has expired when the larger contract it is contained within has expired. *See Crystal Blue Granite Quarries, Inc., v. McLanhan*, 261 Ga. 267, 268 (1991) (holding that when a lease failed to renew, the arbitration clause therein was no longer enforceable). Here, neither corporate entity "died" or ceased to exist. Greensky did not appoint a new holding or parent company to manage its contractual obligations. Plaintiffs have not met the burden to prove agency has been revoked.

A principal is bound by all acts of his agent within the scope of his [agent's] authority, including the execution of contracts. O.C.G.A. § 10-6-51; *see also Hutchens v. State*, 174 Ga. App. 507, 508 (1985). "Non-signatory business entities are covered by arbitration agreements entered into by corporations which are their alter egos." *Comvest LLC v. Corp. Sec. Group*, 234 Ga. App. 277, 280 (1998). "Because a principal is bound under the terms of a

7

valid arbitration clause, its agents, employees and representatives are also covered under the terms of such agreements." *Id.* (citation modified); *see also Pritzker v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) (showing agency logic has been applied to bind non-signatory business entities to arbitration agreements). As an agency relationship has been established between GS and Greensky, agency law binds Greensky to the contract. Plaintiffs contracted with GS to provide work performance for GS and its affiliates. Here, the contractual obligations in the Employment Agreement did not expire. The agreement did not state it had an end date or conditions for expiration. If anything, Greensky reaffirmed the agreement with the March 2024 letter.

      Even if GS was not Greensky's agent, third-party beneficiary status may be applied here. A third-party beneficiary has standing to bring an action on an agreement when it is facially clear the contract is intended for the third party's benefit. *Backus v. Chilivis*, 236 Ga. 500, 502 (1976). Both parties to the contract must specifically intend that the third party be a beneficiary of the agreement. *Se. Grading, Inc. v. City of Atlanta*, 172 Ga. App. 798, 800 (1984). Intent to benefit is shown in a contract if "the promisor engages to the promisee to render some performance to a third person." *Starrett v. Com. Bank of Georgia*, 226 Ga. App. 598, 599 (1997). The beneficiary must be identified, but need not be specifically named. *Green v. Pateco Serv., LLC*, 348 Ga. App. 132,

8

135 (2018). Again, Plaintiffs contracted with GS to provide work performance for GS and its affiliates. Greensky, a GS affiliate, was an intended beneficiary of the Employment Agreement. The Plaintiff points to no language indicating this intended benefit was nullified.

Continuing to evaluate legal constraints, under Georgia contract law an unconscionable and unenforceable contract is "such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of." *Caley,* 428 F.3d at 1378. Procedural and substantive unconscionability must both be present; "[p]rocedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves." *NEC Tech., Inc. v. Nelson*, 267 Ga. 390, 392 (1996). Plaintiffs have not alleged unconscionability of any sort. Plaintiffs also failed to allege fraud or duress required by law.

Finally, this Court examines if divestiture or change of corporate structure alters the contractual obligations. Plaintiff fails to point to any cases showing that corporate restructuring or divesting nullifies an agreement. Courts have held corporate divestiture is not crucial factor for change, but the intention of the parties is what matters. *See High Point SARL v. T-Mobile USA, Inc.,* 640 Fed. Appx. 917, 925 (Fed. Cir. 2016) (showing the party challenging the agreement will need to point to a record indicating a desire or

9

incentive to curtail rights of future divested business). Moreover, the Employment Agreement here did not contain any terms that indicated it would be negated by divestiture, expiration, or other legal constraints. Accordingly, after determining that this is the type of dispute both parties agreed to arbitrate and there are no legal constraints foreclosing arbitration, this Court will follow Eleventh Circuit law to stay litigation and compel arbitration.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS the Defendant Greensky's Motion to Compel Arbitration [Doc. 12]. Plaintiffs are DIRECTED to submit their claims to individual arbitration, or they will be deemed abandoned. This matter is hereby STAYED until further order of the Court.

SO ORDERED, this   11th   day of February, 2026.

                                                                                                                  THOMAS W. THRASH, JR.
                                                                                                                  United States District Judge